## SAMUEL WATSON *v*. D. Z. REED, *et als.*

1. PRINCIPAL AND SURETY. *Stayor.* *What will release.* A stayor will not be released upon the ground "that it is a contract or agreement for delay, without his consent." Where such agreement is after judgment, and only a voluntary promise, not founded upon any consideration, and not binding upon the creditor.

Case cited: Peay *v.* Poston, 10 Yerg., 111; Bryant *v.* Rudisell, 4 Heisk., 656; Leading Cases in Eq., 559.

2. SAME. *Same.* The stayor will be released, when, by the active interference of the creditor, the burden of the debt has been shifted from the property of the principal, after a specific lien is fixed upon it, so as to throw it upon the surety.

Cases cited: Johnson & Taylor *v.* Ivey, 4 Cold., 608; Finley *v.* King, 1 Head, 123; Lindsey *v.* Thompson, 1 Baxter, 463.

No record of this case to be found.
4—VOL. 4.

McFarland, J., delivered the opinion of the Court.

The bill and amended bill taken together, allege in substance, that, on the 23d May, 1860, D. Z. Reed & Bro. recovered judgment against Washington Barrow before a Justice of the peace. · That the complainant became security for stay of execution. On the 9th of July, 1861, execution was issued, and levied upon the land of Barrow; that Shultz, after Cartwright, to whom the judgment had been assigned, or who claimed to own it, agreed with Barrow, upon the latter's promise to pay the debt in a short time, to hold up the levy, and accordingly did so, this without the knowledge or consent of complainant. That no further steps were ever taken, and the Justice's papers were subsequently lost. That the land was subsequently taken by other creditors of Barrow, who has since died insolvent. The question is, do these facts release Watson, the stayor? The arguments submitted furnish ample reasons and authority for deciding this question either way, but we must, of necessity, determine the question in favor of the one view or the other. It is clear, from the authorities, that this does not release the stayor, upon the ground: " that it is a contract or agreement for delay without his assent," because it is after judgment, and besides was only a voluntary promise, not founded upon any consideration, and not binding upon the creditor; *Peay* v. *Poston*, 10 Yerg., 111; 4 Heisk., 656; 3 Leading cases in Equity, 559.

But it is argued that he is discharged, upon the ground that the creditor has, by his voluntary act, re-

leased or abandoned a lien acquired upon the property of the principal, which, but for his interference, would have been ample security for the debt, and, as a result, the property is now lost and the principal insolvent.

Numerous authorities establish that the creditor is not bound to take active measures to enforce payment of his debt; mere indulgence will not release the surety although the principal become insolvent. A creditor after having instituted proceedings, may fail to prosecute them, but "he is not entitled to relinquish any hold which he has actually acquired upon the property or estate of the principal, and which might have been made effectual for the payment of the debts. This is a necessary result of the rule that a creditor shall not arbitrarily shift the burden of the debt from the property of the party primarily liable for its payment, and impose it upon another, whose liability is secondary." It has consequently been decided, that, where the property of the principal has been taken in execution by the creditor, the lien thus acquired cannot be relinquished without discharging the surety to an extent corresponding with its value. See 3 Leading cases in Equity, 552, where the authorities are digested.

And the same authority says, "it may be laid down as a general principle, that the creditor is bound not to relinquish any right or security which can conduce to the safety or indemnity of the surety, and will be responsible either for refusing to receive or giving up that, which, if accepted or retained, would have been performance or payment; see page 552, also *Johnson &*

*Taylor* v. *Ivey*, 4 Cold., 608, where a refusal of a tender made by the principal was held to discharge the surety. So it is conceded that a levy on personalty of the principal, of value sufficient, will discharge the surety; *Finley* v. *King*, 1 Head, 123. But it is argued that this is not so when the levy is upon real estate. There is no doubt that there is this difference between a levy upon personalty and realty, to wit: a levy upon personalty vests the title of the goods in the officer, and if of value sufficient, satisfies the execution, a levy upon land does not vest the title in the officer or satisfy the judgment, but only creates a lien, which may be discharged, leaving the judgment in force.

It seems that the weight of American authorities hold, that, if the creditor direct a return of the *fi. fa.* before actual levy, it will not discharge the surety, although the *fi. fa.* was a lien upon goods of the principal, afterwards taken by other creditors; but the English authorities are said to be otherwise; 3 Leading cases in Equity, 551, 536. So this Court held, in *Miller* v. *Porter*, 5 Hum., 294, that the surety was not discharged by the fact that the creditor directed a return of the *fi. fa.* before a levy. The opinion puts the case upon the ground that there was no valid and definite agreement for delay, even if this would have discharged a surety after judgment. It is argued that the facts show that the result in that case was that the statutory lien of the judgment upon the principal's land, was lost by the return of the *fi. fa.* No such question was made. It does not appear whether the

principal owned any land, and if he did, it was not lost by the return of the *fi. fa.*, as there was ample time for another to have issued, and a sale of the land within twelve months.    It is true, that some of the cases say that the principle upon which a surety is discharged by the release of a levy upon property, is, that the levy satisfies the execution, and that this is the only way to reconcile the doctrine with the doctrine that the return of a *fi. fa.* before levy, which bound the debtor's goods, will not discharge the surety; but it seems to us, from the principles above set forth, that the release of the surety does not depend upon the question of a technical satisfaction.    Practically, he is much injured by a release of a levy upon land which would have paid the debt, as by the release of a levy upon personalty; and it is upon this principal that he is discharged.    That is, by the active interference of the creditor, the burden of the debt has been shifted from the property of the principal, after a specific lien was fixed upon it, so as to throw it upon the surety.    We are referred to American Leading cases, in support of the position, that a release of a levy upon land will not release the surety where it is said, "moreover, as the exoneration of the surety arises from the loss of a means for the collection of the debt, it will not follow from the abandonment of a levy on land, *which is bound by the lien of the judgment,* nor in any case where it is clearly apparent that the course pursued by the creditor, was not injurious."    We have not examined the two cases referred to in support of this, but we would un-

derstand it to mean, that a release of the levy on the land would not injure the surety, if the lien of the judgment might have been afterwards enforced. We, of course, have not an opportunity to examine all the cases referred to on the subject, in the notes to American Leading cases, and Leading cases in Equity, with a view to reconcile them. The case of *Lindsley* v. *Thompson*, 1 Baxter, 463, by this Court at last Term, is not in point, as in that case the lien on the land was lost, not by the act of the creditor, but by the act of the debtor.

In this case, the bill alleges in substance, the loss of the lien by the active interference of the creditor. We are of opinion that the decree overruling the demurrer is correct, and affirm it, with the costs of this Court.